580 A.2d 931

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

David James WILLIAMS, Appellee.

Commonwealth Court of Pennsylvania.

Submitted Aug. 3, 1990.

Decided Oct. 4, 1990.

William A. Kuhar, Jr., Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel in Charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, (Harrisburg) for appellant.

Michael D. Flynn, (Bethel Park) for appellee.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

In December of 1988, David James Williams, Appellee, received official notice from the Pennsylvania Department of Transportation (DOT) that his driver's license was being suspended for a period of one year. DOT's action resulted from Appellee's refusal to submit to a blood alcohol test on November 12, 1988, after he had been arrested by a police officer who suspected him of driving under the influence. Appellee appealed DOT's action, and a *de novo* hearing was held before the Honorable Alan S. Penkower of the Court of Common Pleas of Allegheny County. Judge Penkower sustained Appellee's appeal, finding that Appellee did not make a knowing and conscious refusal to submit to the blood alcohol test. DOT now brings this appeal from the order of the trial court. We affirm.

DOT raises two issues in this appeal. DOT first contends that it met its burden of proving that Appellee had, for purposes of Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, refused to submit to chemical testing. Citing the requirements to prove such a claim, as set forth in *Ostrander v. Department of Transportation*, 116 Pa.Commonwealth Ct. 243, 541 A.2d 441 (1988), DOT alleges the evidence established that: (1) Appellee was arrested on the charge of driving under the influence by a police officer who had reasonable grounds to believe that Appellee was driving under the influence; (2) Appellee was asked to submit to a blood test; and (3) Appellee refused. Appellee

does not dispute this assertion, and essentially concedes that DOT did meet its burden of proof in this respect.

However, Appellee does dispute the assertion presented in DOT's second issue; namely, that the warning given by the police officer who arrested Appellee on November 12, 1988, was, or should have been, sufficient to convey the understanding that he did not have the right to consult with an attorney prior to taking the requested blood test. Appellee relies, as did the trial court, on the holdings of *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989), and *Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), and asserts that his refusal to take a blood test was not a knowing and conscious refusal, as is necessary for DOT to impose a license suspension.

A review of the facts of record reveals that Appellee was stopped by Officer Burke of the Dormont Borough police force. Officer Burke testified concerning Appellee's erratic driving, physical condition, and failure to successfully perform two field sobriety tests. (Hearing Transcript, pp. 3–4). The officer testified that at this point he advised Appellee of his *Miranda* rights and the fact that his "refusal to take a blood test ... results in [a] mandatory one-year suspension." (*Id.*, p. 4). Officer Burke stated that Appellee indicated his willingness to take the test at the time of the arrest, (*Id.*, pp. 4–5), however, he refused to take the test once they reached the hospital. (*Id.*).

At the hospital, Appellee told Officer Burke that he would like to have an attorney, and kept repeating this request. (*Id.*, pp. 6–9). On cross examination of Officer Burke, the following exchange took place:

Q  Did you make any statement to [Appellee] concerning the need for an attorney?

A  No, sir; I did not. I just told him that an attorney was not present right there. I told him one was not available for the blood test.

(*Id.*, p. 9).

Appellee also testified that he agreed to take a blood test at the time Officer Burke first made the request, at the

scene of the arrest. Appellee testified that he and the officer had some further discussion concerning the test while travelling to the hospital:

A  We proceeded for a couple minutes.  And I asked the Officer if I could speak to an attorney.  And at that time the Officer said, "Does that mean you are going to refuse to take the blood test?"  I said, "No.  I would like to speak to an attorney."  He said, "Do you know, if you refuse the blood test, you could lose your license?"  I said, "Not really."  He then said, "It could be one year, as well."  And I said, "I would like to speak to an attorney."  And he then turned around and said, "You don't need an attorney.  I am not going to ask you any questions."

\*    \*    \*    \*    \*    \*

Q  At any point in time did Officer Burke ever make any statement to you concerning the applicability of having an attorney present to take the blood test?

A  No.  He did not.  The only thing he said was, "You don't need an attorney.  I am not going to ask you any questions."  I responded by saying that I had a question and I would like to talk to one.  And he said, "No, we are going to the Hospital."

(*Id.*, pp. 11–13).

On cross examination, DOT's counsel questioned Appellee about the circumstances of his refusal after arriving at the hospital:

Q  And when [Officer Burke] asked you to take the test, you said you wanted an attorney?

A  Right.  Well, whenever he asked me in the Hospital, I remained silent in [sic] the first couple times he asked me because I thought I had a right to an attorney for him asking me questions.

(*Id.*, pp. 13–14).

DOT contends that these exchanges between Appellee and Officer Burke were sufficient to convey the under-standing to a reasonable person of average intelligence that

"he only had the right to have an attorney present during questioning and did not have the right to speak with an attorney prior to taking the requested blood test." (DOT's Brief, p. 18). Unfortunately, the actual exchanges between Appellee and Officer Burke did not approach the clarity of the just-quoted language from DOT's brief. The trial court concluded that Appellee was not instructed that his *Miranda* rights were inapplicable to the blood test, despite his repeated requests to speak to an attorney. Given the evidence presented in this case, we find no error in this conclusion, or with the trial court's determination that DOT's action in suspending Appellee's license under these circumstances was improper in light of *O'Connell.*

The holding in *O'Connell* provides as follows:

[W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, *we insist that* in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, *the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.*

*   *   *   *   *   *

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test. (Emphasis added.)

521 Pa. at 252–253, 555 A.2d at 878.

In our judgment, the conclusion of the trial court that the holding of *O'Connell* was controlling in the present case, and that the actions taken here failed to comply with *O'Connell,* was supported by the evidence of record. Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, October 4, 1990, the order of the trial court in the above-captioned matter is hereby affirmed.