## PennDOT v. Billings

*Christopher J. Clements,* deputy counsel-in-charge, for PennDOT.
*Michael P. Gottlieb,* for defendant.

ROSSANESE, *J.,* April 17, 1991—The following is an appeal from a suspension of Edward Billings' driving privileges which resulted from his alleged refusal to submit to a breath or blood test.

The Commonwealth raises the following points of error:

(1) The department sustained its burden of proof to show a valid suspension based upon the motorist's refusal to submit to chemical testing. *Ostrander v. Dept. of Transportation, Bureau of Driver Licensing,* 116 Pa. Commw. 243, 544 A.2d 441 (1988).

(2) The department sustained its burden under 75 Pa.C.S. §1547(b)(2) where this court credited the police officer's testimony that he provided the motorist with the implied consent law warning, i.e., that the motorist's operating privilege would be suspended for one year if the motorist refused to submit to chemical testing.

(3) The motorist failed to make out a valid defense to the suspension based upon the Pennsylvania Supreme Court's ruling in *Dept. of Transportation,*

*Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), that the motorist's refusal of chemical testing was not knowing and conscious where the motorist admitted that the police officer informed him that he had no right to consult an attorney during chemical testing and where the motorist did not request an attorney until after he had refused to submit to chemical testing.

(4) The court erred by sustaining the motorist's appeal based upon the motorist's request to the motorist's fiancee, not to a police officer, to speak with an attorney with respect to chemical testing.

## FACT SUMMARY

On June 6, 1990, appellee was seen traveling north on Route 309, Montgomery Township, at a high rate of speed. Officer Mark Houghtaling followed appellee along Route 309 and then along Stump Road which has a posted speed limit of 35 mph. Still on Stump Road, Officer Houghtaling attempted to catch up to and pass appellee. He was unable to do so due to the high rate of speed at which appellee was traveling. The officer was traveling at 55 mph in the 35-mph zone at that time. Appellee, according to the officer, then skidded, turned a corner and pulled into a driveway which was subsequently found to be appellee's home.

While in the appellee's driveway, the officer approached his automobile and requested that Mr. Billings produce his driver's license and insurance card. The officer testified that when he approached the vehicle he detected an odor of alcohol emanating from appellee. Also, according to the officer, appellee's eyes appeared red and glassy and he allegedly admitted to the officer that he had a few drinks earlier in the evening.

Officer Houghtaling requested that Mr. Billings perform two field sobriety tests. The first was stating the alphabet which was substantially, but not completely, performed. The second was walking a straight line. The officer stated that appellee could not perform this test. Appellee countered that the area in which the test was performed was uneven, causing him to fail. (N.T. 13.)

Appellee was subsequently placed under arrest. As he was being arrested, he called to his fiancee to "call my lawyer, call Bill." (N.T. 7.) Appellee was then taken to North Penn Hospital for a blood test. At the hospital, appellee was read his *Miranda* rights and a loose form of implied consent. Appellee again requested to speak to an attorney but he was told that he "didn't need one for this." (N.T. 14.) The officer then asked appellee to submit to a blood test to which appellee again replied that he wished to speak to his attorney. This response was accepted by officer Houghtaling as a refusal and was so noted.

Appellee's license was suspended for a period of one year as a result of his alleged refusal. Appellee appealed to this court for a de novo hearing, at which hearing this court found that Mr. Billings was confused concerning his *Miranda* rights and his rights under the Implied Consent Law. It is from the grant of Mr. Billings' appeal by this court that the Commonwealth filed the instant appeal.

## DISCUSSION

This scenario is one of a long line of cases this court has recently seen which question the time frame and the usage of the implied consent warnings in conjunction with the *Miranda* warnings. In an ideal arrest situation an arrestee should be given

his/her *Miranda* warnings *and then* an explanation of the implied consent statute. This explanation should include the fact that the "implied" portion of implied consent refers to the obtaining of a Pennsylvania driver's license. Hand in hand with the receipt of that license is an automatic (or implied) consent that if one is stopped for a DUI violation and is determined to be intoxicated one must take a breathalyzer or blood test to determine his intoxication level. If one refuses to submit to a test his license will automatically be suspended for one year. Then, and most importantly for this situation, the arrestee must be told in no uncertain terms that although he has been placed under arrest and his *Miranda* rights have been read him, those rights are *inapplicable* to the submission to and administration of a blood or breathalyzer test.

The burden of proof in suspension cases based upon a refusal to submit to chemical testing has been stated consistently and frequently. The Commonwealth cites *Ostrander v. Dept. of Transportation, Bureau of Driver Licensing,* 116 Pa. Commw. 243, 541 A.2d 441 (1988), which states:

"In license suspension cases under section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in revocation of his driver's license." (citations omitted)

This court found that the Commonwealth had proven that Billings was validly arrested for driving under the influence of alcohol and that he was asked to submit to a blood test. It was not clear, however, whether Billings had indeed refused to take a blood test at the hospital or whether he was simply con-

fused over his right to an attorney to assist him in making a decision to take or not take the requested blood test. The court found the latter as a fact.

Moreover, we do not believe that appellee was properly informed of the import of the implied consent statute. Thus pursuant to no. 4 of the *Ostrander* test appellee was not specifically warned about the result of his refusal. While a portion of the implied consent law was recited it failed to apprise appellee of the full nature and ramifications of his actions. We therefore concluded that the Commonwealth had not met its burden of proof in this case. The Commonwealth, on the other hand, contends that it proved that the implied consent law was fully explained. While there exists broad discrepancies with regard to this issue the court found that even if the officer informed Mr. Billings of his implied consent rights and the results thereof, Billings was duly confused concerning these rights and their relation to *Miranda*.

Next, the Commonwealth contends that Billings failed to properly plead the defense of confusion pursuant to *Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). After the Commonwealth has met its burden under section 1547 and *Ostrander* the burden then shifts to the driver to prove that he was not capable of making a conscious refusal to take the test. This is a factual determination to be made by the trial court. *O'Connell, supra.* What the driver has shown and, in fact, what we find compelling is that the officer's explanation of the implied consent law was clearly insufficient to apprise the driver that while he had been given *Miranda* rights those rights are not applicable to a chemical test for DUI. We did not discount the officer's testimony but we found that his explanation was insufficient.

It should have been evident to the officer that since the driver had requested an attorney in front of his house before ever being read his *Miranda* rights he thought he had the right to speak with an attorney before proceeding further. Couple with that a subsequent recitation of *Miranda* rights and another request to speak to an attorney and the conclusion is clear—the driver felt he had a right to speak to counsel. It is true that the officer told driver that "he didn't need" counsel for a blood test. But this attempt to simplify implied consent is insufficient if not wholly incorrect. Therefore, we found that appellee sufficiently proved his confusion.

The Commonwealth Court, in a recent decision, dealt with a similar scenario as the case at bar. In *Commonwealth v. Williams,* 135 Pa. Commw. 396, 580 A.2d 931 (1990), a driver was arrested for DUI and taken to a hospital for a blood test. The officer testified that he informed the driver that his refusal to take the blood test would result in a one-year license suspension. At the hospital the driver asked for an attorney to which the officer responded, "I told him one was not available for the blood test." *Id.* The Commonwealth Court found that the officer's instruction was not sufficient, considering the driver's consistent requests for counsel, to apprise driver of the implied consent law.

Finally, the Commonwealth desperately claims that since the motorist called to his fiancee to contact an attorney instead of speaking directly to the police officer that this was not sufficient to apprise the officer that driver was either confused or wished to speak to an attorney. The court finds this claim to be meritless and frivolous. The officer, when asked at what point the driver requested counsel, stated that he asked "his wife" in front of their house. (N.T. 7.) Therefore, it is clear that the

police officer heard and understood the request at that time. It is, also apparent that the request was constructive knowledge to the officer that the driver thought he was permitted to speak to counsel at that juncture. It is ridiculous to assume that this statement, although not made directly to the officer, would not be imputed knowledge to the officer since, it was made in his presence.

Accordingly, based upon the foregoing discussion, the decision of this court should be affirmed.